## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **MULTITRACKS, LLC, A TEXAS LIMITED LIABILITY COMPANY;** *Plaintiff* | § § § § | |
| **v.** | § § | **No. A-21-CV-00645-LY** |
| **SHALON PALMER, AN INDIVIDUAL; AND WORSHIP ONLINE INC., A WYOMING CORPORATION;** *Defendants* | § § § § § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Shalon Palmer and Worship Online, Inc.'s Motion to Dismiss the Amended Complaint, Dkt. 23; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.    BACKGROUND

Plaintiff MultiTracks is a Texas-based company that modifies and enhances original master recordings to allow isolated portions of those recordings to be played by subscribers for use during live church meetings or rehearsals. Dkt. 18, at 2-3. Multitracks provides its product through their website, which requires subscribers, typically churches and church music leaders, to agree to Multitracks' terms of use. *Id.* at 3. Under the terms of use, subscribers may use the Multitracks recordings

1

during live performances in a church setting for "personal and non-commercial use" and are subject to "a fine of $1,000 per Download Product for each instance of a violation." *Id.*; Dkt. 2-3, at 11. To identify and prevent misuse of its product, Multitracks embeds each of its recordings with a digital watermark that it can use to identify its products in subsequent recordings. Dkt. 18, at 3.

Multitracks claims that Defendant Palmer, despite agreeing to the terms of use, has misused its recordings to build his own company, Defendant Worship Online, Inc. *Id.* at 4. Multitracks alleges that Worship Online's "entire business is built on its historical misuse of the MultiTracks Product and its continued violations of MultiTracks' Terms of Use." *Id.* According to Multitracks, Palmer has used the recordings he accessed from Multitracks to create video tutorials of songs customarily played by church leaders, "going so far as embedding the MultiTracks Product into the video tutorials that Worship Online sells to its customers." *Id.* When Multitracks discovered its digital watermark on Worship Online's commercial products in 2016, it demanded Worship Online remove the content from its website. *Id.* at 5.

Despite promising to remove the misused content, Worship Online allegedly continued to publish commercial products bearing Multitracks' watermark. *Id.* 5-8. In early 2021, Multitracks disabled Palmer's account to prevent him from further misusing its products. *Id.* at 6. Palmer then created a new MultiTracks account under the name "Jenson Davidson" to continue accessing its products. *Id.* Multitracks alleges that Worship Online has "generated millions of dollars in revenues by exploiting the investments that MultiTracks has made in its business." *Id.* at 7-8.

Multitracks brings three causes of action against Worship Online for: (1) breach of contract; (2) fraudulent inducement; and (3) fraud. *Id.* at 9-10.

At the time Multitracks filed its complaint, it also moved for a temporary restraining order and preliminary injunction enjoining Worship Online's alleged continued unlawful conduct. Dkt. 2. After holding a hearing on the motion, the undersigned recommended that the district court deny Multitracks' requested injunctive relief. Dkt. 28. The district court adopted this report and recommendation, Dkt. 31, and subsequently referred Worship Online's motion to dismiss to the undersigned, Dkt. 32.

## II.      LEGAL STANDARD

### A.      12(b)(1)

A party moving to dismiss based on preemption does so under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Griener v. United States*, 900 F.3d 700, 702-03 (5th Cir. 2018). Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.

2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B.     12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

### A.   Preemption by the Copyright Act

Worship Online contends that the Copyright Act preempts Multitracks' breach-of-contract claim, which is based on Worship Online's alleged violation of the license Multitracks granted Worship Online. Dkt. 23-1, at 16-24; Dkt. 33, at 6-9. Courts "employ a two-prong test to determine whether the Act preempts a state law cause of action." *Digit. Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d

365, 377 (5th Cir. 2020) (citing 17 U.S.C. § 301(a)). First, a court must "examine the state claim to determine whether it falls within the subject matter of copyright." *Id.* at 377-78 (internal quotation marks omitted). If so, the court will then "consider the state cause of action to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright." *Id.* (internal quotation marks omitted). The parties here do not dispute that the first prong is satisfied, *see* Dkts. 29, at 17-19; 33, at 6, so the undersigned will limit the preemption analysis to the second prong—equivalency.

The Fifth Circuit "evaluate[s] the equivalency of the protected rights by applying the 'extra element' test: Preemption does not occur if the state law claim requires 'one or more qualitatively different elements.'" *Digit. Drilling Data Sys.*, 965 F.3d at 378 (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787 (5th Cir. 1999)). "The party arguing against preemption must show 'the presence of any element that renders different in kind its rights under state and federal law.'" *Id.* (quoting *Alcatel*, 166 F.3d at 789); *see also Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 658 (5th Cir. 2017) ("The question is not whether state law provides a right identical to federal copyright law, but whether state law provides a right akin to those 'within the general scope of copyright as specified by section 106.'" (quoting 17 U.S.C. § 301)). In other words, does "the conduct for which the plaintiff is seeking protection under state law amount[] to the copying that copyright law also proscribes"? *GlobeRanger Corp. v. Software AG USA, Inc.*, 836 F.3d 477, 484 (5th Cir. 2016). Or, "is state law protecting the same rights that the Copyright Act seeks to

vindicate, or is it protecting against different types of interference?" *Id.* "Whether a claim is equivalent requires looking to the actual alleged misconduct and not merely the elements of the state cause of action." *Id.* at 485 (citing *Alcatel*, 166 F.3d at 788).

After considering the elements of Multitracks' breach-of-contract claim, the undersigned concludes that it is not preempted by the Copyright Act. Courts throughout the Circuit have recognized the Act's limited preemptive effect in breach-of-contract claims. *See, e.g.*, *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) ("[C]ontract claims are rarely preempted because they involve extra elements like a 'contract promise' or the 'existence of a binding contract.'"); *Motio, Inc. v. BSP Software LLC*, No. 3:16-CV-00331-O, 2016 WL 9559916, at *9 (N.D. Tex. May 27, 2016) ("[T]here is no need to reinvent the wheel with a lengthy reexamination, as simply stated, well-established law teaches that claims for breach of contract … are not preempted by the Copyright Act."); *McConley v. Boise Bldg. Sols. Mfg., L.L.C.*, No. CIV.A. 05-1006-A, 2006 WL 709599, at *4 (W.D. La. Mar. 21, 2006) ("Courts in the Fifth Circuit have consistently concluded that a legitimate breach of contract action defeats preemption." (collecting cases)); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 766 (N.D. Tex. 2006) ("[A] majority of courts have found that breach of contract claims escape the preemptive reach of the Copyright Act.") Courts reaching this conclusion have done so when the state-law claim involved more than "mere reproduction, distribution or display" of the copyright-protected material. *Taquino*, 893 F.2d at 1501.

7

The undersigned finds the analysis in *Recursion* instructive. In that case, a software developer, Recursion, sued another software company, Interactive, for breach of Recursion's licensing agreement. Recursion had discovered that Interactive had embedded certain components of Recursion's software product, Voyager, in a product that Interactive sold. *Recursion*, 425 F. Supp. 2d at 763. As the court explained, "Recursion's breach of contract claim does not concern itself with Interactive's mere distribution of Voyager, but rather that Interactive downloaded that program, incorporated it in its software (Interaction Recorder), and then offered Interaction Recorder for sale to the public." *Id.* at 766; *see id.* ("[I]t is Interactive's conduct of embedding the Voyager program into software that is sold, not the naked distribution of it, that allegedly invades Recursion's private contract rights."). The court concluded that "[t]he scope of a licensee's permissible distribution of Voyager is determined by reference to the contract itself, not the copyright law. The Court thus finds that Recursion's contract claim is not equivalent to the exclusive rights of copyright and is accordingly not preempted." *Id.*

The same reasoning applies here. Multitracks' breach-of-contract claim alleges more than "mere reproduction, distribution or display" of its product. Instead, Multitracks alleges that when Worship Online acquired access to the Mulitracks product, it agreed it was "receiving a 'limited license' to use the MultiTracks Product during live performances in a church setting for 'personal and non-commercial use'" and that Worship Online breached the terms of the "limited license" when it "embedd[ed] the MultiTracks Product into the video tutorials that Worship Online

8

sells to its customers." Dkt. 18, at 3, 4. Resolution of this claim requires more than a mere determination of rights under the Copyright Act—it will require factual findings and application of state law related to Worship Online's contractual promise that are "different in kind" from federal copyright law. *Alcatel*, 166 F.3d at 789. Multitracks' breach-of-contract claim, therefore, is not preempted by the Copyright Act.

Worship Online contends *Recursion* was wrongly decided. Dkt. 33, at 9 n.1. Worship Online's own authority, however, demonstrates the applicability of *Recursion* in this case. Worship Online relies on *Genesys Software Sys., Inc. v. Comerica Bank*, No. 3:12-CV-2682-N, 2013 WL 12126264 (N.D. Tex. Apr. 9, 2013), to argue that a claim based on a defendant's merely exceeding the terms of a licensing agreement sounds in copyright and is therefore preempted. *See* Dkt. 23-1, at 19. But the court in *Genesys* distinguishes *Recursion*, observing that "the contract [in *Recursion*] specifically provided that the copyrighted material was not to be used in a certain manner. … Here, Genesys does not point to any provision of the licensing agreement that prohibits Comerica's use. Unlike the licensing agreement[] in *Recursion* …, Genesys's claim is that Comerica used Genesys's software without permission, *not that Comerica promised not to use Genesys's software in a particular way but did so anyway*." *Genesys*, 2013 WL 12126264, at *3 n.1 (emphasis added). That same distinction applies here—Multitracks does not merely complain that Worship Online used Multitracks' product without permission, rather, Multitracks complains that Worship Online agreed to not use Multitracks' product in a particular way but then did so anyway.

For the foregoing reasons, the undersigned concludes that Multitracks' claims are not preempted by the Copyright Act and will therefore recommend that Worship Online's motion to dismiss asserting preemption be denied.

**B.     Copyright Misuse**

Worship Online argues that Multitracks' attempt to assert a breach-of-contract claim based on its "unduly restrictive licensing scheme" is barred by the doctrine of copyright misuse. Dkt. 23-1, at 13-16; Dkt. 33, at 9-12. Multitracks has not sued Worship Online for copyright infringement. As Multitracks explains in its response to Worship Online's motion, courts have observed that copyright misuse "is not a defense to state law claims." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1157 (9th Cir. 2011); *see also Davidson & Assocs., Inc. v. Internet Gateway, Inc.*, 334 F. Supp. 2d 1164, 1182-83 (E.D. Mo. 2004) (noting "reluctan[ce] to apply the copyright misuse defense as a defense to a contract claim, because the defense is normally used in copyright infringement actions"). It would "make[] little sense to allow" Worship Online to assert this affirmative defense as a basis for dismissal "when there has been no allegation of copyright infringement." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005). Having declined Worship Online's invitation to shoehorn Multitracks' claims into the Copyright Act, the undersigned likewise concludes that the copyright-misuse doctrine does not bar Multitracks' claims. *See id.* ("We have already rejected Clear Logic's copyright preemption argument. We cannot now void the license agreements under the pretext of refusing to enforce a copyright that has not been asserted.").

10

### C.   Multitracks' Fraud Claims

#### 1.   Statute of Limitations

Worship Online contends that because Multitracks alleges that Worship Online's wrongdoing began in 2014, the four-year statute of limitations found in the Texas Civil Practice and Remedies Code bars Multitracks' claim for fraud. Dkt. 23-1, at 25 (citing Tex. Civ. Prac. & Rem. Code § 16.004(a)(4)). Multitracks responds that: (1) Worship Online "accepted" Multitracks' terms of use on multiple occasions, not just in 2014, but as recently as April 2020; and (2) to the extent the claims can be viewed as tied to the 2014 contract, the doctrine of equitable tolling applies, rendering its fraud claims timely. Dkt. 29, at 15-17. Regarding the first argument, Multitracks acknowledges that its Amended Complaint does not explicitly refer to Worship Online's acceptance of terms in April 2020 and requests leave to amend its complaint to make this more clear. *See id.* at 16 n.1. The undersigned concludes, however, that amendment is not necessary—when considering the totality of the allegations in the Amended Complaint, including the factual background set out in the "General Allegations" section, it is reasonable to conclude that Multitracks alleges ongoing fraud that took place within the statute of limitations. Dkt. 18, at 2-9.

As for the fraudulent conduct that allegedly occurred outside of the limitations period, the undersigned agrees that Multitracks' invocation of the doctrine of equitable tolling is sufficient to avoid dismissal under Rule 12(b)(6). "'[E]quitable tolling [is] the judge-made doctrine ... that excuses a timely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the

information he needed in order to be able to file his claim on time.'" *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 311 (Tex. 2010) (quoting *Taliani v. Chrans*, 189 F.3d 597, 597 (7th Cir. 1999)). Multitracks argues that its Amended Complaint sufficiently alleges facts supporting equitable tolling, pointing to Palmer's agreeing to the terms of use with no intent of complying, something Multitracks could not know at the time, and Palmer's allegedly false promise to stop violating the terms once Multitracks confronted him about it in 2016. Dkt. 29, at 20.

Worship Online's reply primarily takes issue with Multitracks' depiction of the facts supporting this argument. *See* Dkt. 33, at 13-14. These sorts of factual disputes, though, are not properly resolved in the 12(b)(6) context. While the operation of the statute of limitations may later be the subject of a motion for summary judgment, the undersigned concludes that it is not an appropriate basis for dismissal at this procedural juncture. *Adhikari v. KBR Inc.*, No. 4:16-CV-2478, 2017 WL 4237923, at *9 (S.D. Tex. Sept. 25, 2017) ("[C]ourts have held that because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion." (collecting cases) (internal quotation marks omitted)); *see also Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2014 WL 4449800, at *2 (N.D. Tex. Sept. 9, 2014) (noting that the question of equitable tolling "is not generally well-suited to being resolved on a Rule 12(b)(6) motion" (citing *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 652 (S.D. Tex. 2011))).

2.      Rule 9(b)

Worship Online complains that Multitracks' fraud allegations are conclusory and do not meet the heightened pleading-particularity requirement set out in Federal Rule of Civil Procedure 9(b) for fraud claims. Dkt. 23-1, at 18-19. The undersigned disagrees. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A fraud claim requires pleading with particularity the "'who, what, when, where, and how' of the alleged fraud." *United States ex. rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 F. App'x 890, 892 (5th Cir. 2013) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). Multitracks' Amended Complaint meets this basic requirement. *See* Dkt. 18, at 10-11. Namely, Multitracks alleges that Palmer and Worship Online fraudulently induced Multitracks into a contract for the use of its product when Palmer intentionally misrepresented his intent, beginning in 2014, to comply with the terms of use that he purported to accept but never intended to abide. *Id.* While Multitracks could have alleged more detail in its complaint, the undersigned does not conclude that more is required to comply with Rule 9(b). Worship Online's motion to dismiss on this basis, therefore, should be denied.

3.      Economic Loss Rule

Worship Online argues that Multitracks' fraud claims are also barred by the "economic loss rule." Dkt. 23-1, at 19-20; Dkt. 33, at 8-9. The economic loss rule precludes recovery in tort when the loss is the subject matter of a contract between

the parties. *E.g.*, *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 495 (Tex. 1991) ("The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."). Multitracks responds that because it alleges fraudulent inducement, its fraud claims are not barred by the economic loss rule. *See* Dkt. 29, at 19 (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998)). In *Formosa Plastics*, the Texas Supreme Court held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." 960 S.W.2d at 47. The court reasoned that "an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement." *Id.*

"Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation; (2) made with knowledge of its falsity or asserted without knowledge of its truth; (3) made with the intention that it should be acted on by the other party; (4) which the other party relied on; and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). Here, Multitracks' fraud claims allege that "Palmer intended to cause Worship Online to deceive Plaintiff by misrepresenting that it agreed to the Terms of Use when it had no intention of performing under the Terms of Use," and "Palmer intended for

14

Worship Online to deceive Plaintiff by using a fake name to create a MultiTracks account, agree to the MultiTracks Terms of Use, and purchase MultiTracks Products." Dkt. 18, at 10, 11. These allegations sufficiently allege a cause of action for fraudulent inducement to survive Worship Online's motion on this basis.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Worship Online's motion to dismiss, Dkt. 23, in its entirety. **IT IS FURTHER ORDERED** this cause of action is removed from the docket of the undersigned and **RETURNED** to the docket of the Honorable Lee Yeakel.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District

Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

    SIGNED March 1, 2022.

                                    DUSTIN M. HOWELL
                                    UNITED STATES MAGISTRATGE JUDGE